JOSEPH ROBINSON, *et al. vs.* PERRY TOWNSHEND, *el ux.*
*December*, 1831.

W, by his last will devised as follows: "I give and bequeath to my daughter A, the sum of $60, as an annuity, to be paid to her out of the profits of my real estate annually." This is an annuity, and not a rent charge.

This annuity being in arrear, the devisee filed her bill against the infant devisees of the land, their guardian, and the personal representative of the testator, alleging the annuity to be a charge on the land and its profits, and praying for an account—that the lands may be sold,—the proceeds applied to the payment of the annuity, so far as necessary, and the balance invested to meet future instalments, and for general relief. HELD, that as the bill contained no allegation or suggestion of the receipt of the rents and profits by the defendants, or any of them, nor of the annual value of the land, nor of the application of the rents and profits, and did not call upon the defendants to make any disclosures upon these subjects, there was no issue, to which evidence, which had been taken in the cause in relation to them, could apply, and that there could be no decree *in personam* against the defendants, under this state of the pleadings.

The neglect of a defendant to answer a bill, upon which a decree *pro confesso* is passed, amounts to an admission only of the allegations in the bill.

The answer of infant defendants, calling upon the complainants to prove the bill, only puts them to the proof of what is charged, and entitles them only to a decree on the case made in the bill, when proved.

APPEAL from Chancery.

On the 17th August, 1826, a bill was filed by the appellees, *Perry Townshend* and *Anne Maria*, his wife, formerly *Anne Maria Duncan*, against the appellants, *Joseph Rob-*

*inson, William J. B. Duncan, Caroline Duncan,* and
*Thomas Iglehart,* administrator *d. b. n.* of *William Duncan,*
deceased.    Upon the death of *Thomas,* after the com-
mencement of the suit, *John Iglehart,* who took out letters
of administration, *d. b. n.* on *W. Duncan's* estate, was
made a defendant in his stead.    The bill alleges that the
late *William Duncan,* the father of the complainant *Anne
Maria,* died about the 25th March, 1819, having first duly
made and published his last will and testament, and leav-
ing the complainant *Anne Maria,* his only issue, by a first
marriage, and two children, *William J. B. Duncan,* and
*Caroline Duncan,* both then and still minors, the issue of
a second marriage, and a widow *Deborah,* whom he con-
stituted the sole executrix of his will.    That by said will
the testator devised his real estate, lying in *Anne Arundel*
county, to *William J. B. Duncan* and *Caroline Duncan,*
as joint tenants; and gave to the complainant *Anne Maria,*
an annuity chargeable thereon, of sixty dollars a year, as
appears by said will, exhibited and made part of the bill.
That said *Deborah,* the executrix, before her death, paid
complainant *Anne Maria,* but one year's annuity, and that
*Joseph Robinson,* (one of the appellants,) who has been
appointed by the proper authority, and now is guardian to
the aforesaid infants, has also paid but for one year, and
that he, the infants, and *Iglehart* the adm'r *d. b. n.,* all re-
fuse to pay any thing more, on account thereof.    That said
annuity is now in arrear for several years, and inasmuch
as the same is made a charge on the lands mentioned in the
will, and the profits thereof; *prayer,* that an account may
be taken, that the said land may be sold, and the proceeds
be applied to the payment of said annuity, as far as may
be necessary, and the balance invested, to meet future
instalments thereof, and for general relief.

The will of *William Duncan,* dated 26th December,
1818, and proved on the 30th March, 1819, exhibited with
the bill, contained the following provisions:    "I give and
devise unto my daughter *Caroline Duncan,* and my son

*William J. B. Duncan*, the plantation on which I now dwell, consisting of several tracts, or parts of tracts of land, called, &c. being contiguous to each other, and containing in the whole 229½ acres, between them, share and share alike, as joint tenants, and not tenants in common." "*Item*, I give and bequeath to my daughter *Anne Maria Duncan*, the sum of $60 current money, as an annuity, to be paid to her out of the profits of my real estate above mentioned, annually, for and during the term of her natural life, withholding from her however, the power of selling, or transferring the above mentioned annual allowance, to any person or persons whatever, under penalty of forfeiture."

The infants, *Wm. J. B. Duncan*, and *Caroline Duncan*, by the guardian, answered, saying, they knew nothing of the matters alleged in the bill, and put the complainants to the proof of them.

The other defendants did not answer. And after an interlocutory decree against them, the case was referred to the auditor, with directions to report to the chancellor, the whole value of the lands in the proceedings mentioned, the annual value thereof, since the death of the testator; and by whom, if by any one, the rents and profits have been received, and the amount thereof; the amount of the arrearages of the annuity with interest, and the age, and general state of health of the plaintiff, *Anne Maria Townshend*, from the proceedings, and such proofs as may be laid before him. And the parties were permitted to take the depositions of witnesses before a justice of the peace, on giving three days' notice, as usual to the opposite party, or his solicitor. In obedience to this order, the auditor took proof, touching the several matters thus referred to him and on the 13th August, 1829, reported on account, charging *Deborah Duncan*, with the annuity to the complainant *Anne Maria*, from the 4th March, 1820, to 4th October, 1824, (when she died) amounting, with interest to the date of the report to $354 16; and charging *Joseph Robinson* with the arrearages which accrued after the death of said

*Deborah.* There were also some depositions relating to the same matters, taken before a justice of the peace, agreeably to the above order.

The defendants excepted to the report of the auditor, upon the ground, among others, " that there was no evidence in the cause duly and regularly taken, according to the course of chancery proceedings, by which the defendants can in any wise be charged or affected, or any decree passed against the infant defendants, touching, or concerning the interests of said infants, or said *Robinson,* in the land, in the bill mentioned, or otherwise.

BLAND, Chancellor, August 17th, 1829.

This cause standing ready for hearing, and having been submitted on the notes of the solicitors of the parties, the proceedings were read and considered.

*William Duncan,* having a wife and three children, and being possessed of some personal property, and seised of a tract of land containing about 229 acres, on the 26th of December, 1818, made his will, and had it legally attested by three witnesses, by which, he devised all his real estate to his two infant children, *Caroline Duncan* and *William J. B. Duncan,* as joint tenants; and also gave them all his personal property, and to his other child he gave in these words: *"Item.* I give and bequeath to my daughter *Anne Maria Duncan,* the sum of sixty dollars, current money, as an annuity, to be paid to her out of the profits of my real estate above mentioned, annually, for and during the term of her natural life, withholding from her however, the power of selling or transferring the above mentioned annual allowance, to any person or persons whatever, under penalty of forfeiture." On the 4th of March, 1819, without having made any alteration of this his will, he died, and the will was soon after proved in the usual form, by two of the subscribing witnesses. *Deborah Duncan,* the widow, qualified as executrix under the will, and was the guardian of the infant children, and after her death, which happened

some time in the latter end of the year 1824, *Joseph Robinson* was appointed guardian to the two infant children, and administration *de bonis non* was granted to *Thomas Iglehart.* Upon this state of things, *Anne Maria*, with her husband *Perry Townshend*, on the 17th of August, 1826, filed their bill against *Iglehart, Robinson*, and the two infant children, alleging that the annuity has not been paid, and praying that the arrears might be decreed to them, and that the land might be sold for the payment thereof. The infant defendants answering by a guardian *ad litem*, admit nothing, and put the plaintiffs upon the proof of their case. The defendants, *Iglehart* and *Robinson*, having failed to answer, the usual interlocutory decree for the default was passed against them, after which *Thomas Iglehart* died, and administration *de bonis non* of the estate of the late *William Duncan*, was granted to *John Iglehart;* and this suit having been revived against him, and he having failed to answer, an interlocutory decree for the default went against him also, after which the case was submitted for a final decision; but conceiving that some further information was indispensably necessary to enable me to frame such a decree as was best suited to the nature of the case, I passed the order of the 21st of February, 1828, in answer to which the auditor made his report of the 26th May, 1829.

The defendants have excepted to the auditor's report of the 26th of May last, for several causes. 1st. Because they had not the credits to which they were entitled, which, so far as it relates to the sum of twenty dollars, since admitted to have been paid by the late *Deborah Duncan*, is well founded. The next special exception of the defendants to that report of the auditor, is, that there is no evidence whatever, in the cause, duly and regularly taken, according to the course of chancery proceedings. It was the well settled practice of the Court of Chancery of *Maryland*, under the provincial government, and has continued to be so ever since the establishment of the republic, without any doubt or interruption, that in all cases where an ac-

count was required by the court, or the parties, a special commission might issue, directing the commissioners to take testimony, "and also to state, audit, settle and adjust all accounts relating to the matter in dispute, that should be produced to them," and to reduce into writing such account, and to return the same with the depositions of the witnesses. *Pro. Chan.* 1762, *lib. D. D. No.* I. 315. The *act of* 1785, *ch.* 72, *sec.* 17, which authorised the court to appoint an auditor, does not in any respect impair or abrogate the previous ancient practice, and therefore special commissions, calling for the return of an account along with the proofs, have often been issued since the passage of that act. *Rutland vs. Yates,* 25th August, 1789. Hence, as the court might clothe commissioners appointed to take testimony with the authority to state an account, from the proofs collected by them, so it has been held ever since the passage of the act of 1785, that when a case is referred to the auditor by an interlocutory decree to account, or by an order directing him to state an account, or make estimates, as in this instance, from the proofs in the cause, or any other proofs that may be laid before him, such a reference in itself, places him in the same situation he would have stood according to the ancient course, had a special commission been directed to him to take testimony, and also to state an account, which indeed is affirmed by the act of 1785 itself, by its authorising him to administer an oath to all witnesses, and persons proper to be examined upon such account. *Norwood vs. Norwood,* 2d Nov. 1801. *Barney vs. Hollins,* 4th January, 1810. Consequently, all the testimony collected and returned by the auditor in this case, has been taken, according to the long and well established course of the court.

With regard to the taking of testimony under the authority of a special order of the court, before a justice of the peace, I have not been able to ascertain the origin of this practice, or to trace it back to so remote a period as that of taking testimony before an accounting officer of this

court; but I have seen it spoken of more than five and twenty years past, as a well settled practice. *The State vs. Brooke,* 27th May, 1803. And the court has gone so far as to compel a witness to submit to an examination before a justice of the peace, where it had been authorised by a special order. *Onion vs. McComas,* 1804. This mode of collecting testimony, it is believed, is peculiar to our chancery proceedings, for I have met with no mention of any such practice in the *English* books. It is, however, not only in some respects the cheapest form of gathering proofs, but in many instances it greatly facilitates and expedites the progress of the cause; and the proofs are thus taken under all the principal safeguards which can in any manner insure fairness and fulness of evidence; that is, the special order of the court, on oath, publicity, the right to cross examine, and a final responsibility. It is upon these grounds, that I think this mode of taking testimony deserves the continued sanction, approbation, and protection of this tribunal. *Winder vs. Diffenderffer,* 4th May, 1829. The testimony taken under the order of the 21st February, 1828, before a justice of the peace, has therefore been brought in, according to the regular course of the court.

The will of the late *William Duncan* it appears, has been proved and recorded, according to the act of 1715, *ch.* 39, *sec.* 2, which declares "that it shall and may be lawful for the judge of the probate of wills to take the probate, or cause to be proved, any last will and testament within this province, although the same concerns titles of land," which for this purpose is still in full force. A probate so made of a will devising real estate, it has always been held, is at least *prima facie* evidence of its validity. 1 *Harr. and McHen.* 162. 4 *Harr. and Johns.* 145. 10 *Wheat.* 465. And there being in this case no evidence which so far questions the validity of the will, as to throw the burthen of sustaining its verity upon the plaintiffs, and these infant defendants, as well as the plaintiffs, claiming under it, the

certified copy offered, must be considered sufficient for all the purposes for which it is produced.

From the pleadings and proofs in the cause, it is very clear that this will cannot be so construed, as to authorise a sale of the real estate, for the purpose of raising or securing the payment of this annuity; nor can it be construed to give the plaintiff, *Anne Maria*, an estate for life, or any other less estate, in the lands charged with the payment of the annuity. These infant devisees could only take this estate, subject to the charge upon it, and the annual rents and profits, as it is now shown, so far exceed the annuity in amount, as to demonstrate, that it is much to their benefit so to take it, and consequently all their property, in respect of this large amount of assets thus placed in their hands, is liable for the payment of this annuity. For the arrears which accrued since the death of the testator, and were left unpaid by their late guardian, *Deborah Duncan*, her sureties, if she gave any, or her legal representatives, may be held responsible to these infant defendants. But their estate is liable to these plaintiffs, to whom the sureties or legal representatives of the late *Deborah Duncan* are in no way responsible; and the present guardian of these infant defendants, *Joseph Robinson*, not having answered, and having thereby tacitly admitted that he had received a sufficiency of rents and profits from his ward's estate, must be held absolutely liable for the whole amount of the annuity which accrued, and has been left unpaid during the time of his guardianship. For the purpose of having a statement made upon these principles, the case was again sent to the auditor, who as directed, reported the statements on the 13th inst.

Whereupon it is on this 17th day of August, 1829, by *Theodrick Bland*, chancellor, and by the authority of this court, adjudged, ordered and decreed, that the bill of complaint be taken *pro confesso*, against the defendant, *Joseph Robinson*, and that the infant defendants, or the said *Robinson*, as their guardian, out of the estate and property of said wards, now in his hands, or which may hereafter come into

his hands, pay to the said plaintiffs, or bring into this court to be paid to them, the sum of $354 16, with interest on $255, part thereof, &c.   And it is further adjudged, &c. that the said *Robinson* pay to the said plaintiffs, or bring into this court to be paid them, the sum of, &c. together with the costs of this suit, &c. the same to be paid by the said *Robinson* out of the assets of his said wards in his hands, if any there be; if not, out of his own proper estate and effects.   And as against the defendant *Iglehart*, the bill was dismissed, with costs.

   From this decree the defendants, *Robinson* and the two *Duncan's,* appealed to the Court of Appeals.

   The cause was argued before BUCHANAN, Ch. J., ARCHER, and DORSEY, J.

   *Mayer* and *Pinkney,* for the appellants, contended,
   1. That the devise in the will of *Duncan,* created a rent charge, and that the complainants had a complete remedy at law. 1 *Madd. Ch. Pr.* 78. 1 *Eq. Cases Abr.* 32.   *Green vs. Winter,* 1 *Johns. Ch. Cas.* 80.   *Phillips vs. Thompson, Ib.* 144.   *Benson vs. Baldwin,* 1 *Atk.* 598.   2. That there is no evidence in the cause to charge the appellant.   The infant defendants were not in default, and as their answers denied any knowledge of the statements of the bill, the latter should have been supported by proof, taken in the usual way under a commission.   Evidence taken under a reference to the auditor is not sufficient.   The act of 1785, *ch.* 72, *sec.* 17, defines the powers of the auditor, and the chancellor cannot enlarge them : that act merely empowers the auditor to ascertain the *extent* of a liability, and not its actual existence.   3. The relief granted by the decree is inconsistent with the relief sought by the bill.   They admitted that the chancellor might decree a different relief from that which the bill asked for, provided the statements and charges of the bill would justify it, but not otherwise. But in this case, there is no allegation, that the infants or

their guardian received the rents and profits, and therefore the decree against them in *personam* is erroneous. *Coop. Eq. Plea.* 14, (*margin.*) 4. The representative of *Deborah Duncan* should have been made a party to the bill. 2 *Brig. Dig.* 519. 1 *Ib.* 509. *Pla.* 243.

*Speed,* for the appellees.

The proof taken by the auditor is sufficient to warrant the decree. He contended that the cases cited on the other side, upon the point of jurisdiction, were cases of rent charge, created by deed, reserving the right of distress, as incident thereto. In the case at bar, there is a mere equitable lien, unaccompanied by any such right, and of course there is no remedy at law. The objection however, cannot be urged in this way ; it should have been insisted on by way of demurrer, or plea, or answer and plea, setting up the want of jurisdiction. *Underhill vs. Van Cortlandt,* 2 *Johns. Ch. R.* 369. He argued, that although the relief decreed, was variant from the specific prayer of the bill, yet it was warranted by the general prayer. *Graham vs. Yates and Myers,* 6 *Harr. and Johns.* 229. *Drury vs. Conner, Ib.* 288. Upon the question of parties, he referred to *Conner vs. Drury,* 2 *Harr. and Gill,* 221.

BUCHANAN, Ch. J., delivered the opinion of the court.

The bill alleging the annuity bequeathed to the complainant, *Anne Maria Townshend,* by her father, *William Duncan,* to be a rent charge upon the land devised by the same ancestor, to his two other children, *William Joseph Bend Duncan* and *Caroline Duncan,* both infants of tender years, seeks a sale of the land so supposed to be charged for the payment of the arrearages of the annuity stated to be due, and an investment of the surplus proceeds of sale, to meet the accruing annuity as it shall become due. *Deborah Duncan,* now dead, the widow of *William Duncan* the testator, administered on his estate, and was the guardian of the infant devisees, and on her death, *Joseph Robinson* was

appointed guardian to the children. The bill as amended, is against the two infant devisees, and *Joseph Robinson* their guardian, and *John Iglehart*, the administrator of the administrator *d. b. n.* of the testator, *William Duncan*. *Robinson* and *Iglehart*, neither of them answered the bill, and the infant defendants in their answer, neither deny nor admit any of its contents, but say they know nothing of them, and put the complainants to proof, &c. It appears from the proof taken by the auditor, that from the time of the death of the testator, *Deborah Duncan*, who was the guardian of the children, received the rents and profits until her death, and that from the time of her death, they have been received by *Robinson*, the present guardian.

The chancellor in his decree, has taken the bill *pro con-fesso*, as against *Robinson*, and dismissed it as against *Iglehart*, and directed that the infant defendants, or *Robinson* their guardian, shall pay to the complainants out of the estate of his wards, or bring into chancery, to be paid to them, the amount of the annuity accruing during the life of *Deborah Duncan*, their former guardian, and stated by the auditor to remain unpaid, with interest, and that *Robinson* shall pay to the complainants, out of the property of his wards in his hands, if there be any, or if not, out of his own estate, or bring into the Court of Chancery to be paid to them, the amount of the annuity accruing since the death of *Deborah Duncan*, and stated by the auditor to remain unpaid, with interest and costs of suit. Which decree, independent of the objection urged, that it is not consistent with the relief sought by the bill, but of a different character, that being for a sale of the land on the ground that the annuity was a charge upon the land, cannot we think be sustained.

If we have taken a correct view of the subject, it was passed upon the evidence taken by the auditor, and not upon the case made by the bill. The bill contains no allegation or suggestion, of the receipt of the rents and profits by the infant defendants, or either of their guardians, or of the annual value of

the land, or of the application of the rents and profits of any part of them, for the benefit of the infants, by either of their guardians.    Nor is either of the defendants called upon to make any answer or disclosure in relation to the annual value of the land, or to the receipt, or amount, or application of the rents and profits: there is therefore no issue, to which the proof in relation to the receipt of the rents and profits, and to the annual value of the land upon which the annuity claimed is alleged to be a charge, is applicable, and consequently none to support the decree, however correct it might have been, if there was such an issue in the case. The neglect of the defendant *Robinson*, to answer, amounts to an admission only of the allegations in the bill, and nothing more; and the answer of the infant defendants, calling upon the complainants to prove the bill, only puts them to the proof of what is charged in the bill, and entitles them only to a decree on the case made in the bill, when proved.    If it was necessary to prove the receipt of the rents and profits, and the amount, by the infant defendants, or their guardians respectively, or the annual value of the land, to entitle the complainants to the relief decreed, it was equally necessary to aver in the bill such receipt, or annual value, to make a case in the pleadings for such a decree.

The annuity bequeathed to *Anne Maria*, one of the complainants, is not a rent charged; it is directed to be paid out of the profits of the real estate, and there is no right or power of distress given; and there is no proof in the cause that any portion of the rents and profits was ever applied by either of the guardians, to the benefit of the infant defendants: nor does it appear that any personal property belonging to them ever came to the hands of the defendant, *Robinson*, or that they have any.    *Deborah Duncan*, the former guardian, may have applied the whole of the rents and profits received by her, (except so much as was applied to the discharge of the annuity,) to her own purposes, to the prejudice of the infant defendants;

and the defendant, *Robinson*, may have done the same, and they are by the decree, subjected to the discharge of the whole of the annuity, accruing from the death of the testator, and remaining unpaid, to be paid by them or by the defendant, *Robinson*, out of their estate, which is not directed to be sold. So far as the decree is against *Robinson*, and he is directed to pay the money out of the estate of the infant defendants, if he has in his hands no personal property belonging to them, and none should come into his hands, the decree cannot be complied with, as he is not authorised to sell the real estate. And as to that amount of the annuity which has accrued since the death of *Deborah Duncan*, and remains unpaid, we think that the defendant, *Robinson*, should not be made to pay it out of the property of the infant defendants, but his own, if he has appropriated no part of the rents and profits received by him for their benefit, but applied the whole to his own purposes, which for any thing appearing in the record, may have been done.

We do not mean to say, that the complainants would not be entitled to relief on a proper case, made against the proper parties, and supported by appropriate proof. All we do say is, that in our opinion, this is not such a case, and that the decree must be reversed, with costs in both courts.

**DECREE REVERSED.**